[Civ. No. 19043. First Dist., Div. Two. Aug. 22, 1960.]

DONALD P. GIBSON, Respondent, v. STATE OF CALIFORNIA, Appellant.

Hoge, Fenton, Jones & Appel, Charles H. Page, Robert E. Reed, Robert F. Carlson, Edward J. Conner, Jr., for Appellant.

Stewart & Tuttle, William K. Stewart, Robert Tuttle and Patricia Lane for Respondent.

GOOD, J. pro tem.*—The State of California appeals from a judgment in a wrongful death action in the Superior Court of Monterey County in favor of plaintiff in the sum of $5,000

*Assigned by Chairman of Judicial Council.

damages for the death of his mother. The other defendants, Thomas Thompson, an individual doing business as Monterey Ambulance Service and Alfred Sanchez, driver of the ambulance in which decedent was being carried at the time of the accident, have not appealed. A collision between the ambulance and a state-owned dump truck occurred on July 1, 1958 at about 1:30 p.m. on State Route 117a between Monterey and Salinas on a straight stretch of the highway just east of a gradual curve known as Toro Curve. The dump truck was engaged in hauling loads of dirt from a berm along the south side of the highway to the north side of the highway where it was used to widen the shoulder on the north side. At the time Lyons, a subforeman employed by the state, was controlling traffic and testified he was standing approximately 1,350 feet east of a "Men and Equipment Working Sign" erected at the west end of the project on a steel tripod 8 feet high with three red flags at its top; that the loading operation was some 250 feet easterly of his position; that he had a signal paddle in his right hand held up with the "Stop" side in plain view of the Salinas (east) bound traffic lane but that no vehicles were in sight at the time Hummel, the truck driver, pulled his loaded truck away from the loader and commenced his U-turn. Hummel testified that when the loader had filled the dump-bed he looked west and Lyons signalled him to proceed with his turn and that at that time he saw the "Slow" side of the raised signal paddle facing him.

After Lyons' signal to Hummel, the ambulance carrying plaintiff's 77-year-old mother came into view. There is testimony that it was on a nonemergency run and was travelling about 45 miles per hour. Sanchez, the driver, testified that he saw no "Men and Equipment" sign at the west end of the job; that he slowed to 35 miles per hour as he passed Lyons; that he moved into the westbound lane in order to avoid Lyons; that Lyons had the paddle by his side but did not signal with it; that he saw about five pieces of equipment on the shoulder to his right and that just as he was passing the last of them the dump truck pulled out, turned without any signal and hit the ambulance's right side, swung it around and onto the shoulder where it hit some slippery material and was thrown into a roll. There were no skid marks. The dump truck was stopped at the point of impact and the ambulance after rolling over one and a half times rested on its top about 96 feet from point of impact. The decedent, thrown from the ambulance, subsequently died from injuries received.

Since the trial of the action and about a week after the state filed its opening brief herein the Supreme Court rendered its decision in *Yarrow* v. *State,* 53 Cal.2d 427 [2 Cal. Rptr. 137, 348 P.2d 687]. It is conceded that that decision disposed of appellant's contentions that the waiver of sovereign immunity contained in section 400 of the Vehicle Code (now §§ 17000-17003) was limited by the provisions of section 453 of said code and that subdivision (b) thereof (now § 21053) retained sovereign immunity from liability for damages arising out of the negligent operation of publicly owned vehicles engaged in work upon the surface of a highway. The Yarrow case held that said section was clearly limited to the penal consequences of violations of Vehicle Code regulations and did not operate to relieve the public employee or public employer from civil liability for personal or property damage caused by the negligent operation of motor vehicles while engaged in highway maintenance and repair. The case of *Patterson* v. *Delta Lines, Inc.,* 147 Cal.App.2d 160 [304 P.2d 842] held that a shoulder is included in the word "highway" throughout the Vehicle Code and cites many sections to demonstrate that when the legislature wants to limit the application of any particular proviso to the main travelled portion of a highway it has consistently used the word "roadway" to accomplish such limitation. The dump truck involved herein was therefore engaged in work upon the surface of a highway for all purposes of the Vehicle Code section involved.

The trial court refused an instruction containing the substance of said section as requested by the state but in addition to the routine negligence instructions gave an instruction purporting to quote the provisions of Vehicle Code, section 544 (now §§ 22107-22109), proscribing a turn upon a roadway until it can be made with reasonable safety, without limiting its application to defendants other than the State of California and proceeded with BAJI 149, revised, instructing the jury that a violation of a statute gives rise to a presumption of negligence. The combined effect of these instructions was to permit the jury to rest its finding of liability as against the state upon negligence *per se.* The Yarrow decision, *supra,* holds that section 453, subdivision (b) (now § 21053), relieves the state from *per se* negligence but that the duty of care owed to a particular plaintiff by the operator of a publicly owned vehicle coming within the terms of said section must be determined from the facts of each case under the ordinary

rules of common law negligence (*cf.* 53 Cal.2d p. 442 [25]). In view of this, the error of said instructions is apparent.

An erroneous instruction is not prejudicial when the record discloses that, without the error, the jury would in all reasonable probability have returned the same verdict. (*Shuey* v. *Asbury*, 5 Cal.2d 712 [55 P.2d 1160].) But where an appellate court cannot determine to what extent an erroneous instruction influenced a jury in arriving at a verdict, such error is material and requires reversal. (*Dutcher* v. *Santa Rosa High Sch. Dist.*, 137 Cal.App.2d 481, 485 [290 P.2d 316, 291 P.2d 557].) Where there is a substantial conflict in the evidence material to a major issue to which an erroneous instruction may be addressed it is difficult to conceive circumstances in which an appellate court may determine with any reasonable certainty that the erroneous instruction did not influence, if not control, a finding based upon such erroneous instruction. Where, as in the instant case, liability on the part of the state may be predicated only upon common-law negligence and there is substantial evidence that would support a finding that under the circumstances of the particular work in progress the state and its employees had exercised due care, it cannot be said that the verdict was not based upon a finding of negligence *per se*. The question as to whether or not the truck driver in the exercise of ordinary care in making the particular turn was entitled to rely upon the warnings posted or signals given by the highway crew may have been considered by the jury under the routine negligence instructions. But in view of the truck driver's testimony that, because of the exigencies of the situation, his attention was solely directed forward and easterly from the time he received the signal to commence his turn from the subforeman controlling traffic from the west, it is eminently probable that the jury based its verdict upon the erroneous instruction that a presumption of negligence arose from his seemingly manifest violation of Vehicle Code, section 544. The argument that the error is not prejudicial because section 544 may be considered as doing no more than establishing a standard of care for determining ordinary negligence cannot be sustained. It is true that *Clinkscales* v. *Carver*, 22 Cal.2d 72 [136 P.2d 777] held that, where a boulevard stop sign had been posted under a defective ordinance, the mere fact that such defect absolved a violator from criminal liability did not prevent the violation from being considered *per se* negligence in a civil suit for damages. But no

public agency was involved in the case and the act required by the invalid ordinance was held, in itself, to constitute an appropriate measure of due care—in effect, a formulated standard of reasonable conduct in the particular circumstances, the violation of which would be negligence as a matter of law (cf. [3, 4], pp. 75-76). In the circumstances involved in the instant case, the question of the state's or its employee's negligence was clearly a question of fact to be determined by the jury without reference to the presumption mentioned. *Raynor* v. *City of Arcata,* 11 Cal.2d 113 [77 P.2d 1054] cited by respondent merely held that where a public employee was granted immunity from civil liability by statute the employer city's liability under a separate statute waiving sovereign immunity was not affected. In view of the Yarrow decision respondent's arguments may not be sustained and the negligence *per se* instructions were prejudicial.

The remaining issues need be discussed but briefly. ■ Appellant's contention that it was error to reject evidence that funeral expenses were paid by the decedent's estate is not sound. To the extent that plaintiff was heir or beneficiary under decedent's will, he suffered the loss of money paid out by the executor for funeral expenses (*Adams* v. *Southern Pac. Co.,* 4 Cal.2d 731 [53 P.2d 121] ; *Robison* v. *Leigh,* 153 Cal.App.2d 730 [315 P.2d 42]). ■ A second contention that a judgment of $5,000 of which some $1,300 may be ascribed to burial expense, is excessive and unsupported by evidence is also unsound. The respondent testified that decedent helped him with advice on finance, taxes and in running the household. He was a single man, living with his mother. An allocation of $3,700 for the loss of comfort and society is not so large as to suggest passion, prejudice or corruption on the part of the jury or shock the conscience (*Weaver* v. *Shell Company,* 34 Cal.App.2d 713 [94 P.2d 364] ; *Daggett* v. *Atchison, T. & S. F. Ry. Co.,* 48 Cal.2d 655 [313 P.2d 557, 64 A.L.R.2d 1283]).

The judgment is reversed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied September 21, 1960, and respondent's petition for a hearing by the Supreme Court was denied October 19, 1960.