[Civ. No. 9872.   Third Dist.   Oct. 5, 1960.]

FRANK R. MILLER, Respondent, v. ANSON-SMITH CONSTRUCTION COMPANY (a Corporation) et al., Appellants.

162

Rich, Fuidge & Dawson and Thomas Marsh for Appellants.

Weis, Weis & Harpham for Respondent.

WARNE, J. pro tem.*—This is an appeal by the defendants from a judgment entered upon a verdict for the plaintiff, an unpaid subcontractor who brought an action on labor and materialmen's bonds.

On July 17, 1952, the Anson-Smith Construction Company entered into three contracts with the State of California to act as general contractor in the construction of certain buildings for the Department of Fish and Game. The three projects were known collectively as the Darrah Springs Fish Hatchery job. On the same day the Glens Falls Indemnity Company executed labor and materialmen's bonds to indemnify subcontractors against nonpayment by the general contractor. Anson-

*Assigned by Chairman of Judicial Council.

Smith Construction Company entered into a subcontract with Miller to do the painting on Projects 2 and 3. Plaintiff began this work in January or February of 1953 and continued with the job to July 1, 1953, when, due to "personal feelings" between Anson-Smith Construction Company and the plaintiff because of plaintiff not being paid in full the amount due him as progress payments and appellant's claim that his work was "unsatisfactory to the State of California," plaintiff, at the suggestion of Harold C. Wright, the construction company's general superintendent, employed one J. D. Gilbert, a licensed painting contractor, to complete the job. At that time the job was 98 per cent complete. After Gilbert had been on the job for 23 days, the work was still unsatisfactory due to certain claimed defects and a Mr. D. F. Singletary was employed to take over the job. The job was then completed to the satisfaction of the State of California.

The evidence is conflicting as to whether the painting done by the plaintiff conformed to the specifications called for in the contract. The jury resolved that issue by its verdict, finding for the plaintiff. There is substantial evidence in the record to sustain the jury's implied finding that the plaintiff performed his job in accordance with the specifications called for in the contract; hence the jury's implied finding is binding upon this court. The effect and weight of the evidence was a matter for the jury to determine. "When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

Defendant first contends that the trial court committed prejudicial error in allowing plaintiff to introduce into evidence, as an exhibit, a letter written by Harold C. Wright to plaintiff regarding his work while on the job. The letter is on the letterhead of Anson-Smith Co., General Engineering Contractors, and reads as follows:

"June 20th 1953

"To Whom It May Concern:

"The bearer, Mr. Frank R. Miller, has acted in the capacity of painting contractor at the Darrah Springs State Fish Hatchery, completing this project to the entire satisfaction of everyone concerned.

"The work involved here consisted of all types of construction; structural steel, re-infoced [*sic*] concrete structures, stucco and wood dwellings, all of which were painted.

"His work was more than satisfactory and I take pleasure in recommending him for any work involving painting. His ability to mix and blend paints of all types helped in the completion of this job at an early date.

"Very truly yours,
/s/H. C. WRIGHT
Harold C. Wright
Gen'l Supt.
Anson-Smith Const. Co."

As hereinabove stated, the record shows that Wright was the general superintendent and agent on the job for Anson-Smith Construction Company, and that he supervised all of the men who worked on the job and all of the subcontractors. As stated by plaintiff in his testimony: "A. . . . In other words, anybody that worked there, he was over them. He kept check on them to see that they did what they were supposed to and kept the job coming up so one guy wouldn't get behind and do something wrong that wasn't in the specifications. . . . Q. And, throughout the progress of the job, did he have occasion to examine the quality and materials of your work? . . . THE WITNESS: Every day. He was right there all the time."

There is also evidence in the record that Wright, as well as the job inspector, a Mr. Beamer, had to approve the work done on the job and make progress reports before progress payments were made to the subcontractors. Such payments were made on the basis of these reports. Substantially all of plaintiff's contacts with the general contractor were made through Mr. Wright. Even when the president of the defendant construction company was personally on the job, Wright was present when matters pertaining to the job were discussed. In fact, it is not disputed that Wright inspected and had the power to approve or reject the work. The letter was written while the work was in progress and concerned a matter within the scope of Wright's employment.

The rule in relation to the admissions made by an agent in the course and scope of his authority has been stated as follows: ". . . 'The principle upon which the declaration or representations of an agent, within the scope of his authority, are permitted to be proved, is, that such declarations, as well as his acts, are considered and treated as the declarations of his principal. What is so done by an agent, is done

166

by the principal through him, as his mere instrument. So whatever is said by an agent, either in the making of a contract for his principal, or at the time, and accompanying the performance of any act, within the scope of his authority, having relation to, and connected with, and in the course of the particular contract or transaction in which he is then engaged, is, in legal effect, said by his principal, and admissible as evidence; not merely because it is the declaration or admission of an agent, but on the ground, that being made at the time of and accompanying the contract or transaction, it is treated as the declaration or admission of the principal, constituting a part of the "res gestae," a part of the contract or transaction, and as binding upon him as if in fact made by himself. ▪ But declarations or admissions by an agent, of his own authority, and not accompanying the making of a contract, or the doing of an act, in behalf of his principal, nor made at the time he is engaged in the transaction to which they refer, are not binding upon his principal, not being part of the "res gestae," and are not admissible in evidence, but come within the general rule of law, excluding hearsay evidence; being but an account or statement by an agent of what has passed or been done or omitted to be done,—not a part of the transaction, but only statements or admissions respecting it.' '' (4 Wigmore on Evidence, § 1078, p. 119; see also McCormick on Evidence, § 244, pp. 517, 519.)

▪ When the facts and circumstances of this case are viewed in the light of the stated rule, it appears that the letter was properly admitted. As general superintendent, Wright passed on the work performed and approved all progress reports prior to payment. Thus, under the circumstances, an admission by him that the work was being satisfactorily performed would be admissible against his principal. The fact that the admission was in the form of a letter which plaintiff could use as a letter of recommendation is immaterial. In other words, the issue is not whether Wright had the authority to write the letter, but rather whether or not Wright had the authority to make a statement as to the quality of the work performed by the plaintiff. That issue having been decided in the affirmative, the admission was properly received in evidence regardless of the form which it took.

▪ Defendants next contend that the trial court committed prejudicial error in admitting into evidence, over their objection that it was hearsay, a letter purportedly written by the witness, D. F. Singletary. The letter is on the letterhead

of Dave F. Singletary Painting Contractor, and reads as follows:

"9-26-53

"Mr. F. R. Miller

The paint used on Darrah Springs Hatchery by me was Fuller.

"Fullerglo on the wood and kitchen and bath walls.

/s/ D. F. SINGLETARY"

Plaintiff offered this letter for impeachment of Singletary's testimony, which was to the effect that in correcting the defects in plaintiff's paint job and bringing it up to specifications he performed his part of the work in accordance with said specifications. "Fullerglo" was a different type of paint from that called for in the specifications; hence his letter stating he used "Fullerglo" is contrary to his testimony to the effect he performed his part of the work in accordance with the specifications, and was admissible for impeachment purposes only and not for the purpose of proving the truth of the statement that "Fullerglo" was used. Even if the letter might be said to be subject to the objection that it was hearsay, and hence not admissible as an exhibit, we fail to see wherein it could have possibly been prejudicial to the defendants. The pertinent question in this case was not what brand of paint Singletary used, but did the plaintiff use the brand of paint specified in the specifications; nor may defendants now urge for the first time that the exhibit was improperly admitted for the purpose of impeachment because of plaintiff's failure to first lay the foundation necessary for its admission under the provisions of section 2052 of the Code of Civil Procedure.

In *People* v. *Sellas*, 114 Cal.App. 367, 378 [300 P. 150], the court stated: "In 8 California Jurisprudence, 517, the following rule is laid down: 'It is a general rule that an appellate court will not consider objections to the admission of evidence, unless the precise ground of objection was clearly specifed in the trial court. The efficacy of an objection, as a general rule, depends upon the precision with which it is made. And a party cannot be permitted to abandon the ground of objection taken below and assume another one upon appeal. The defendant is deemed to have waived all grounds of objection not stated by him.' " (See also Witkin, California Evidence, pp. 734-735.)

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.