[Civ. No. 20085. First Dist., Div. Two. Oct. 15, 1962.]

DONALD P. GIBSON, Plantiff and Appellant, v. STATE OF CALIFORNIA, Defendant and Respondent.

460

Stewart & Tuttle, W. K. Stewart, Robert W. Tuttle and Patricia Lane for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel and Robert O. Angle for Defendant and Respondent.

KAUFMAN, P. J.—This is an appeal by the plaintiff from a judgment in favor of the State of California rendered on a jury verdict in an action seeking damages for the wrongful death of the plaintiff's mother who was injured in a collision between a state-owned dump truck and the ambulance in which she was being transported. At the prior trial of the matter, the jury returned a verdict in favor of the plaintiff against the state, the ambulance driver, Alfred Sanchez, and his employer, Monterey Ambulance Company. The state alone appealed and this court reversed solely because of an error in the instructions predicated on *Yarrow* v. *State of California,* 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687] (*Gibson* v. *State of California,* 184 Cal.App.2d 6 [7 Cal.Rptr. 315]).

Appellant argues that the judgment in favor of the state must be reversed because: 1) the negligence of the state was established as a matter of law; 2) the evidence did not indicate that the state was free of contributory negligence; 3) there were certain prejudicial errors in the instructions on concurrent negligence; and 4) the trial court erred in its admission of certain evidence. We cannot agree.

The collision between the ambulance and the state-owned dump truck occurred on July 1, 1958, about 1:30 p. m.

on State Route 117-A between Monterey and Salinas on a straight stretch of the two-lane highway just east of a gradual curve known as the Toro curve. The dump truck was engaged in hauling loads of dirt from a berm along the south side of the highway to the north side of the highway, where it was used to widen the shoulder on the north side. At the time, one Lyons, a subforeman employed by the state, was controlling traffic. He testified that he was standing approximately 1,350 feet east of a "Men and Equipment Working" sign erected at the west end of the project on a steel tripod 8 feet high with 3 red flags at its top; that the loading operation was some 250 feet east of his position; that he had a signal paddle in his right hand held up with the "Stop" side in plain view of the Salinas (east) bound traffic lane but that no vehicles were in sight at the time the truck driver pulled his loaded truck away from the loader and commenced his U-turn. The truck driver, Clarence Hummel, testified that when the loader had filled the dump bed, he looked west and Lyons signaled him to proceed with his turn and that at that time, he saw the "Slow" side of the raised signal paddle facing him.

After Lyons signaled to Hummel, the ambulance carrying the plaintiff's 77-year-old mother, came into view. The uncontroverted testimony indicated that the ambulance was on a nonemergency run, taking the plaintiff's invalid mother from her home in Pacific Grove to the county hospital in Salinas. The driver of the ambulance, Sanchez, testified that he was driving about 45 miles an hour, and saw no sign at the west end of the construction; that he slowed to 35 miles per hour as he passed Lyons; that he moved into the Monterey (west) bound traffic lane in order to avoid Lyons; that Lyons had the paddle by his side and did not signal with it; that he saw about 5 pieces of equipment on the shoulder to his right and that just as he was passing the last of them, the dump truck pulled out, turned without any signal, and hit the ambulance's right side, swinging it around onto the shoulder where it hit some slippery material and was thrown into a roll. There were no skid marks. The dump truck was stopped at the point of impact and the ambulance, after rolling over one and one-half times, rested on its top about 96 feet from the point of impact on the shoulder of the west bound traffic lane. The decedent, thrown from the ambulance, subsequently died from injuries received.

The first two contentions on appeal are, in effect, that the evidence is not sufficient to support the verdict in

favor of the state. In the prior appeal, we said at page 10: ". . . there is substantial evidence that would support a finding that under the circumstances of the particular work in progress the state and its employees had exercised due care. . . ." The sole reason for the reversal was certain errors in the instructions on negligence per se, due to the Supreme Court's recent ruling in *Yarrow* v. *State of California,* 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687], that the liability of the State was to be determined by reference to the ordinary rules of common law negligence requiring only reasonable care under all the circumstances (*Gibson* v. *State of California, supra,* at p. 9).

It is well established that an appellate court's decision on the sufficiency of the evidence becomes the law of the case, binding on a subsequent appeal, so long as the evidence on retrial is not substantially different in a material respect from that on the former trial (*Murphy* v. *Atchison T. & S.F. Ry. Co.,* 162 Cal.App.2d 818, 822 [329 P.2d 75]). On the second appeal, we look not only to the opinion of the court but also to the prior record for the purposes of determining whether the law of the case should control in the determination of the second appeal (*Estate of Baird,* 193 Cal. 225 [223 P. 974]). In the instant case, the only new evidence presented at the second trial was the testimony of Lawrence Perkins, the ambulance assistant, who was riding in the rear with the decedent at the time of the accident. His testimony, however, was merely cumulative to that of Sanchez. Although appellant's first two contentions are based on Hummel's testimony, we note that this was virtually identical to his testimony at the prior trial (*Gibson* v. *State of California, supra*). Thus, we are compelled to hold that the law of the case applies.

Even assuming *arguendo* as appellant contends, that the rule of the law of the case should not apply, we can only conclude on the basis of the record that there is ample evidence to sustain the verdict. As indicated above, the liability of the state is to be determined under the ordinary rules of common-law negligence.

Appellant, however, argues that Hummel was negligent as a matter of law. This argument ignores the fact that Hummel was not an ordinary driver on the road, but actively engaged in maintenance work on the highway.

The right to public use of a highway while road work is being done is subordinate to the right of the public authorities to make improvements in the public interest (*Jones* v.

*Hedges,* 123 Cal.App. 742 [12 P.2d 111]). Thus, the amount of care required of a person performing work in a public street or highway is less than that of an ordinary driver (*Scott* v. *City & County of San Francisco,* 91 Cal.App.2d 887 [206 P.2d 45]). The reasons for this rule are well articulated in *State etc. Ins. Fund* v. *Scamell,* 73 Cal.App. 285 [238 P. 780] at pp. 290-291: "There can be and there is no duty imposed on a workman to be constantly on the lookout for motor vehicles; on the contrary, it is the duty of drivers of vehicles to observe the street laborers and to avoid contact with them. It is not negligence as a matter of law for a workman to keep his mind on his work or to fail to look and listen for approaching vehicles. . . .

"One so employed may also assume that a driver will give a signal or warning so that an accident may be avoided. (*Regan* v. *Los Angeles Ice [& Cold] Storage Co.,* 46 Cal.App. 513 [189 P. 474].)

"A man who is engaged in work upon the streets cannot, if he performs his duty, spend a large part, if not all, of his time looking for the approach of vehicles. In most streets if he did so, he would accomplish little or nothing."

 Appellant further argues that the state was negligent as a matter of law as it was contributory negligence not to place another flagman on the Salinas side of the loading area. The determination of what duty of care is owed to a particular plaintiff must be made on the facts of the individual case (*Yarrow* v. *State of California, supra*). Reasonable care here required the giving of a warning by the work crew, and the evidence indicates the presence of Lyons and the sign. The conflict in the evidence between the testimony of Lyons that he had his signal paddle up with the "Stop" side in plain view of the Salinas-bound traffic and Sanchez' testimony that Lyons was standing with his arms at his side, was properly left to the jury. Under the evidentiary features of this case, manifestly, it cannot be held as a matter of law that adequate warning notice was not given or that the acts of the state employees were the proximate cause of the decedent's injuries. From the testimony of Lyons, the jury could reasonably have concluded that adequate warning was given which should have caused the ambulance driver to exercise caution. Whether slowing to 35 miles per hour after passing the signalman was due caution was also a factual matter for the jury. Furthermore, the state's waiver of sovereign immunity applies only to negligence in the operation of a motor vehicle (Veh. Code,

§ 17001; *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], suspended by Stats. 1961, ch. 1404, p. 3209).

Appellant next contends that the court gave erroneous instructions on concurrent negligence which misled the jury. Appellant concedes that the instructions given were correct but argues that by modifying his proffered instructions to eliminate the name of Sanchez, the trial court misled and confused the jury as to the concurrent negligence of Hummel, Lyons and Sanchez. There is no merit in this contention. As the court correctly instructed the jury on concurrent causation, appellant is not entitled to have the jury instructed in any particular phraseology (*Lemere* v. *Safeway Stores, Inc.*, 102 Cal.App.2d 712, 726-727 [228 P.2d 296]). Furthermore, the record reveals that at appellant's request, the instructions referred to "two or more persons," and that the jury was properly instructed as to the responsibility of the state for the operation of motor vehicles by its employees and that there could be more than one proximate cause, making several people liable, regardless of the degree of contribution. The jury knew that the only question was whether any conduct on the part of Hummel and Lyons with respect to the operation of the dump truck was negligent and whether such conduct proximately caused or contributed to the collision. Thus, the deletion of Sanchez' name from the instructions could only benefit the appellant.

The final argument on appeal is that the trial court erroneously admitted into evidence a freehand diagram drawn by Sanchez immediately prior to the trial on a blackboard in the courtroom. The diagram was drawn at the request of appellant's counsel, who referred to it in his opening statement. When the respondent's counsel attempted to use the diagram in his opening statement, appellant's counsel objected. The trial court then remarked that since the drawing was probably not entirely accurate, a scale map should be obtained. Both counsel obtained the scale map which was admitted into evidence as plaintiff's Exhibit 1. During his testimony, Sanchez illustrated his testimony by reference to this exhibit. On cross-examination, he was shown his prior freehand diagram and was asked a number of questions about it in relation to the marks he had made on the scale map. Appellant then objected to the use of the drawing on the ground it was misleading and inaccurate. After permitting appellant's counsel to question his witness on *voir dire*, the

court admitted the drawing into evidence for the limited purpose of impeachment.

 Appellant argues that the court abused its discretion in admitting the drawing as no proper foundation had been laid. However, the appellant apparently did not make this objection during the trial and cannot now complain (*Miller* v. *Anson-Smith Constr. Co.*, 185 Cal.App.2d 161, 167 [8 Cal.Rptr. 131]). Furthermore, the record supports the conclusion that there was proper foundation in accordance with section 2052 of the Code of Civil Procedure that the diagram was a prior inconsistent statement (*Pierce* v. *J. C. Penney Co.*, 167 Cal.App.2d 3, 8 [334 P.2d 117]).

No prejudicial error appearing in the record before us, the judgment must be and is hereby affirmed. The order denying the motion for a new trial being not appealable, the appeal therefrom is hereby dismissed.

Shoemaker, J., and Agee, J., concurred.