[Civ. No. 27726.   Second Dist., Div. Four.   July 27, 1964.]

HELEN WYNNE PHILBRICK, Plaintiff and Appellant, v. IRVING WEINBERGER et al., Defendants and Respondents.

Leo Shapiro for Plaintiff and Appellant.

Spray, Gould & Bowers, Joseph L. Spray, James Benson and Bernard A. Newell, Jr., for Defendants and Respondents.

KINGSLEY, J.—This is an appeal by plaintiff, Helen Wynne Philbrick, from an adverse judgment after a trial by jury, which absolved defendants, licensed pharmacists, from

all liability for injuries allegedly caused to plaintiff's eye by reason of their negligence in filling a prescription calling for Neo Decadron Ophthalmic Ointment, a medication intended for use in the eye.

Except for the issue of causation, the facts are not in dispute, and may be summarized as follows: On March 10, 1961, some foreign substance blew into plaintiff's right eye which she was unable to remove. Due to the fact that plaintiff could not remove this foreign substance, and because it was causing some pain and discomfort to her eye, she made an appointment to see Dr. Henry G. Farish, an ophthalmologist, the following day, Saturday, March 11. After examining plaintiff's eye, Dr. Farish found and removed a thread. He diagnosed plaintiff's eye disorder as acute conjunctivitis with ulcerated blepharitis.[1] Since plaintiff's eye was red and inflamed, Dr. Farish furnished plaintiff a prescription for some medication, which he told her to have filled. The prescription called for Neo Decadron Ointment, a medication for use in the eye. To have the prescription filled plaintiff went to defendants' pharmacy. Commencing later that day plaintiff applied the medication which she received from defendants to her eyes. Both that day and the following day plaintiff applied the medication to her eyes at intervals of about three or four hours so that there were eight applications over the weekend. By Sunday night, March 12, plaintiff noticed that her right eye was becoming redder and there was a burning sensation. Plaintiff also noticed that her face was swelling and was becoming painful. Because of the severe pain and discomfort plaintiff was feeling, her appointment to see Dr. Farish on Monday was advanced from 4 o'clock in the afternoon to 9 or 10 o'clock in the morning. At this visit Dr. Farish diagnosed plaintiff's condition as Parenaud's ocular-glandular fever.

Defendants admit that, instead of dispensing Neo Decadron Ophthalmic ointment which was called for by the prescription from Dr. Farish, they dispensed to plaintiff a tube of Neo Decadron Topical Cream, a skin lotion; and that they were negligent in dispensing the wrong medication. Defendants do, however, contend that their negligence in dispensing

---

[1] The conjunctiva is a transparent membrane containing blood vessels over the white of the eye and conjunctivitis occurs when that membrane becomes inflamed and red with infection. Blepharitis is an infection of the lids of the eye, usually at the margin.

the wrong medication to plaintiff was not the direct and proximate cause of the injury to her eye.

On the other hand, while plaintiff seems to concede the fact that the Topical Cream did not cause Parenaud's ocular-glandular fever, she contends that it did cause the corneal injury to her right eye. And because of this corneal injury she cannot now read without glasses; and even with glasses can only read with great difficulty because her vision blurs and she gets sick in her stomach; and, in the event her eye is exposed to light, it causes her great pain. That previous to her use of the Topical Cream she had never worn glasses and her vision was 20-20.

Although plaintiff does not seriously question the sufficiency of the evidence to support the judgment, she does contend that, since there was also competent evidence to support a judgment in her favor, errors of law committed by the trial court are necessarily magnified in proportion, and become prejudicial in nature.

To avoid any misunderstanding as to the exact nature and extent of the evidence propounded by defendants which supports the judgment in their favor, we deem it wise to relate the following: Dr. McBride, who had extensive training and teaching experience, as well as 25 years of specialized practice in ophthalmology in Los Angeles, testified that, in his opinion, the Topical Cream would not injure either a normal eye or one afflicted with conjunctivitis and blepharitis. It was his opinion that, if the Ophthalmic Ointment was not available, then the Topical Cream would be a good substitute with which to treat the eye.

Dr. John Brady Rogers, who had practiced medicine in California for 36 years, had spent 10 years as senior surgeon at the Los Angeles General Hospital, and who was certified by the American Board of Ophthalmology and the American College of Surgeons, and who limits his practice to the eyes, testified that he had often prescribed Neo Decadron Topical Cream for use on the eyelids and was sure that a small amount got into the eyes every time. He never had any trouble with that cream and was of the opinion that it would not be harmful in the eyes. On cross-examination, plaintiff's counsel asked Dr. Rogers whether the constant repetitive effect of eight applications of Topical Cream in the course of a day and a half would have an irritating effect on the eye. The doctor replied that the cream would not have any irritating effect and, in fact, it would help the eye because it had

the same active ingredients as the eye ointment does. Dr. Rogers also agreed with Dr. McBride, who said that the use of Topical Cream in an eye having a condition of conjunctivitis or ulcerated blepharitis would not produce or result in damage or irritation.

## I

■ Plaintiff's first contention is that the court committed error in refusing to give the adaptation, B.A.J.I. Instruction No. 21-B. 1—DEMONSTRATION NOT REQUIRED, to B.A.J.I. Instruction No. 21—BURDEN OF PROOF AND PREPONDERANCE OF EVIDENCE.[2] Plaintiff would have us believe that, without this instruction, the jury could well have been of the opinion, and probably was, that she was required to demonstrate or prove beyond the possibility of error that defendants' admitted negligence was the proximate cause of her injury. And, if the jury had been told and understood that demonstration, or proof, which, excluding all possibility of error, produces absolute certainty, was not required and is rarely possible, it might well have concluded that plaintiff had sustained the burden of proving defendants' negligence was the proximate cause of her injury. We cannot agree.

In 1958, B.A.J.I. Instruction No. 21-B.1 was superseded by B.A.J.I. No. 21 (revised), the instruction given by the court in the case at bar. Even in its new, concise form, B.A.J.I. No.

___

[2]B.A.J.I. Instruction No. 21: "In civil actions the party who asserts the affirmative of an issue must carry the burden of proving it. [In other words, the 'burden of proof' as to that issue is on that party.] This means that if no evidence were given on either side of such issue, your finding as to it would have to be against that party. When the evidence is contradictory, the decision must be made according to the preponderance of evidence, by which is meant such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein. Should the conflicting evidence be evenly balanced in your minds, so that you are unable to say that the evidence on either side of the issue preponderates, then your finding must be against the party carrying the burden of proof, namely, the one who asserts the affirmative of the issue."

The adaptation to B.A.J.I. Instruction 21, 21-B.1 reads as follows: "The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. It is proper to find that a party has succeeded in carrying his burden of proof on an issue of fact, if the evidence favoring his side of the question is more convincing than that tending to support the contrary side, and if it causes the jurors to believe that on that issue the probability of truth favors that party."

21 (revised)[3] adequately instructs the jury on the burden of proof by designating the party who has the burden of proving each issue of the case. The correctness of the trial court's action in giving B.A.J.I. Instruction No. 21 (revised) and refusing the superseded B.A.J.I. Instruction No. 21-B.1 is no longer open to question. (See *Orr* v. *Los Angeles Met. Transit Authority* (1963) 213 Cal.App.2d 699, 705 [29 Cal. Rptr. 355].)

In addition to B.A.J.I. Instruction No. 21 (revised), the court gave numerous other jury instructions. A perusal of the instructions actually given the jury reveals that those instructions did adequately advise the jurors of the nature of the burden of proof and how to apply it to this case. B.A.J.I. Instruction No. 26 (revised) provided the jury with a standard by which to judge the credibility of witnesses and the manner in which they might be impeached. They were told in B.A.J.I. Instruction No. 33 how to consider the opinion of an expert witness and to ''give it the weight to which you deem it entitled, whether that be great or slight'' and to weigh the reasons given for such an expert opinion. Next B.A.J.I. Instruction No. 33-A suggests how the jury might resolve conflicts between the testimony of experts by weighing the reasons given and considering the relative credibility and knowledge of the experts. Finally, the jury was cautioned by B.A.J.I. Instruction No. 7 to ''consult with one another'' and decide the case on the effect and weight of the evidence. ■
The law is also well settled that, if all instructions, taken

[3] B.A.J.I. No. 21 (Revised) reads as follows: ''In civil actions, the party who asserts the affirmative of an issue must prove that issue by a preponderance of the evidence.

''By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and from which it results that the greater probability of truth lies therein. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your finding upon that issue must be against the party who had the burden of proving it. In this action, the plaintiff has the burden of proving the following issues: ..............
......................................................................
......................................................................
....................................................................;
and the defendant has the burden of proving these issues: ............
...................... ....................... ...................
............ ... . ............... ............... . ...............
''In determining whether or not an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it.''

together, give to the jury a fair and just understanding of the law upon the point to which they are addressed, such is sufficient. (2 Witkin, Cal. Procedure, Trial, § 71, and cases cited therein.)

II

█ Plaintiff next contends that one of the jurors, Mrs. Artie M. Brown, stated falsely on *voir dire* examination that neither she nor any member of her family knew Joseph Spray, Jr., the attorney trying the case for defendants, or any member of the law firm of Spray, Gould & Bowers, and that such concealment prevented her from having a fair and impartial trial. █ It is, of course, well settled that an intentional concealment by a juror, during his *voir dire* examination, of a state of mind which would prevent his acting impartially, constitutes an irregularity for which a new trial may be granted under section 657, subdivisions 1 and 2, of the Code of Civil Procedure. (*Kraus* v. *Walt Disney Productions, Inc.* (1963) 221 Cal.App.2d 736 [34 Cal.Rptr. 702].)
█ Such, however, is not the case here. This contention was urged by the plaintiff on her motion for new trial, and rejected. The implied finding by the trial judge that there was no sufficient affirmative showing of intentional and conscious concealment of a state of mind which would prevent plaintiff from having a fair and impartial trial is supported by the declaration of juror, Mrs. Brown, and the declarations of Joseph A. Spray and Joseph L. Spray, Jr. (the attorney who tried the case for defendants).

In Mrs. Brown's declaration, which was offered in opposition to plaintiff's motion for new trial, she stated that she vaguely remembered back around 1930 meeting quite briefly and quite casually at a fairly large gathering one Joseph Spray, an attorney. She might have met him one or two more times, and that he would have no reason to remember her. While she believed that Mr. Joseph A. Spray was her deceased husband's friend, she never heard her husband speak of him during their entire married life since the casual group meeting in 1930. Concerning Mr. Joseph L. Spray, whom plaintiff claimed Mrs. Brown knew as a child, the juror said: "I, at no time, had any knowledge that the Joseph Spray that I knew, had a son but believed him to be widowed or divorced." Mrs. Brown's declaration also disclosed that this case was her first trial as a juror and that court procedures and protocol were unknown and foreign to her; that she

answered sincerely and truthfully that she did not recognize the name Spray during the *voir dire* examination or recall the name of Joseph Spray from the early 1930's until the second or third day of trial; that she did not learn that the two attorneys were related until after the trial was over.

By their own separate declarations, both Joseph A. Spray and Joseph L. Spray, Jr., corroborated Mrs. Brown's statement that neither had any recollection of knowing or meeting Mrs. Brown or her deceased husband, and that a file index in the office, which went back to 1937, failed to reveal that the office had ever handled any legal work for either Mrs. Brown or her deceased husband.

Furthermore, no complaint is made by plaintiff that Mrs. Brown's alleged misconduct affected any of the other jurors, and the verdict was unanimous. Nor does any wilful falsity appear. Without an affirmative showing of both wilful falsity and prejudice, no ground for a new trial exists. (*George* v. *City of Los Angeles* (1942) 51 Cal.App.2d 311 [124 P.2d 872].)

### III

Plaintiff next contends that the verdict of the jury is inconsistent with, and contrary to, paragraph 8 of the stipulated facts in the joint pretrial statement which was incorporated into the joint pretrial conference order.[4] Plaintiff grounds this contention on the fact that the modifying participle phrase in paragraph 8, "*causing injury and damage to her right eye,*" forever precluded the litigation of proximate cause as one of the issues in this case. We cannot agree.

Even though the "causing injury and damage ..." wording from paragraph 8 of the joint pretrial statement was incorporated into the pretrial conference order, that participial phrase is still directly contradictory to and inconsistent with other express provisions of the pretrial order itself. The order describes this action as one "for personal injuries sustained by the plaintiff *allegedly caused* by the use and application. . . ." It further states that "plaintiff contends, *and the defendants deny,* that said cream was hazardous, destructive

---

[4]Paragraph 8 of the joint pretrial statement reads: "That plaintiff, believing the said medication to be the medication called for by said prescription, did on the 11th day of March 1961, use and apply a portion thereof to her right eye, in accordance with the directions and instructions of the doctor by whom said prescription was written, causing injury and damage to her right eye."

and dangerous when applied to or used for treatment of inflammation of the eye.''

Assuming, without deciding, that there are inconsistencies in the pretrial order as to whether or not proximate cause was one of the issues in the case, plaintiff interpreted the pretrial conference order as framing proximate cause as an issue for trial by herself offering extensive evidence on that point. Any doubt, if one in fact existed, had been resolved by plaintiff in accordance with the theory upon which she tried the case. Plaintiff cannot now be heard to complain. *Palmer* v. *Financial Indem. Co.* (1963) 215 Cal.App.2d 419 [30 Cal.Rptr. 204] ; *Ragusano* v. *Civic Center Hospital Foundation* (1962) 199 Cal.App.2d 586 [19 Cal.Rptr. 118].)

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1964.