[Civ. No. 34075. Second Dist., Div. One. Dec. 18, 1969.]

FRANK DONAHUE et al., Plaintiffs and Respondents, v.
UNITED ARTISTS CORPORATION, Defendant and Appellant.

**COUNSEL**

Trippet, Yoakum & Papiano and F. B. Yoakum, Jr., for Defendant and Appellant.

Cantillon & Cantillon and James P. Cantillon for Plaintiffs and Respondents.

## OPINION

**LILLIE, J.**—This is the second appeal in the within plagiarism action involving property consisting of television scripts, summaries or story outlines, plaintiffs having successfully challenged an earlier judgment notwithstanding the verdict (245 Cal.App.2d 593 [54 Cal.Rptr. 130], *sub nom Donahue* v. *Ziv Television Programs, Inc.*). Upon retrial the jury again returned a verdict for plaintiffs; the instant appeal is from the judgment based on the verdict and order denying defendant's motion for judgment notwithstanding the verdict.[1]

The second trial proceeded under changed circumstances dictated or countenanced by the opinion on the prior appeal. No other defendants remained in the cause save defendant corporation, the judgment notwithstanding the verdict as to defendant Ivan Tors having been affirmed; also, by stipulation the cause was litigated on plaintiffs' third amended complaint (substantially similar to its predecessor except as to the increased amount of damages alleged) and an amendment to the answer thereto which raised the bar of the statute of limitations (Code Civ. Proc., § 339, subd. 1) allowing two years for the commencement of an action governed thereby.

As its first point on appeal, defendant contends that plaintiffs' claims are barred by section 339, subdivision 1. It is argued that this and six other assignments of error, hereinafter discussed seriatim, singly or collectively demonstrate that the court erred in denying the motion for judgment notwithstanding the verdict; in any event, continues defendant, the judgment in plaintiffs' favor should be reversed. We can agree with neither determination.

Including corroboration of Tors' testimony, there appears to be no suggestion that evidence substantially different in any material respect from that elicited upon the former trial, was presented to the second jury for resolution under its exclusive province as the trier of the fact. As to certain of the issues here involved, it is accordingly intimated by plaintiffs that the prior decision on appeal becomes the law of the case (*Gibson* v. *State of California,* 208 Cal.App.2d 458, 462 [25 Cal.Rptr. 284]); without passing upon the point at this preliminary stage, as was done in *Gibson* we look to the prior opinion for certain relevant material. "The theory of plaintiffs' case was this: before and during the year 1955 they conceived an idea for a television format which they entitled 'The Underwater Legion.' (Fn. omitted.] Sometime in 1955 they submitted the format in written form, together with 12 story outlines, one screenplay and a proposed budget to defendant Ziv Television Programs, Inc. It was expressly and impliedly

---

[1] Absent any discussion thereof in its briefs, defendant's additional appeal from an order denying its motion to tax costs must be deemed to have been abandoned and will be dismissed.

agreed between the plaintiffs and Ziv that if Ziv used the plaintiffs' format, it would pay for it. At that time defendant Tors was a producer, employed by Ziv and shooting segments of a series called 'Science Fiction Theatre.' In 1956 and 1957 defendants Ziv and Tors started to produce a television program entitled 'Sea Hunt' which 'used, exploited and utilized' plaintiffs' format and story outlines. The show was first shown to the public in 1958. Plaintiffs never received any compensation." (*Donahue* v. *Ziv Television Programs, Inc.*, 245 Cal.App.2d 593, 597 [54 Cal.Rptr. 130].)

The latter portion of the foregoing bears upon the first of defendant's contentions, the bar of the statute of limitations. In connection with the "Sea Hunt" program two pilot films were produced by defendant— in 1956 and 1957 respectively. There was evidence that on three occasions in the latter part of 1956 defendant's vice-president showed or "auditioned" the first of such films to certain national advertising agencies who had clients as possible sponsors. In May of 1957, shortly after its production, the second pilot film was viewed by a similar agency with the same end in view. All these events took place more than two years before the filing of plaintiffs' complaint in June of 1959. It is held in *Thompson* v. *California Brewing Co.*, 150 Cal.App.2d 469, 477 [310 P.2d 436], that the two-year statute (Code Civ. Proc., § 339, subd. 1, *supra*) governs an action alleging the use or appropriation of an "idea" in violation of an agreement to pay for the reasonable value thereof; and plaintiffs do not dispute that the holding in the cited case also governs the causes of action alleged in the instant proceeding. What is disputed, however, is the applicability here of the determination in the second *Thompson* appeal (191 Cal.App.2d 506 [12 Cal.Rptr. 783]) in which a judgment of nonsuit was affirmed; the affirmance followed a showing that the contract to pay the value of a "new and novel idea" was breached more than two years prior to commencement of suit. The "idea" being one for the sale and promotion of the sale of beer, the breach in *Thompson* consisted of rather extensive newspaper advertising following plaintiffs' format, and called "tests," in two metropolitan markets (Sacramento and San Diego). Said the court: "Such a 'test' use as was here made of plaintiff's idea immediately disclosed the idea to a substantial segment of the public in two metropolitan centers in this state, and a disclosure of that kind would certainly destroy any further marketability of the idea. Thus, absent some evidence of a contrary understanding between the parties, the law implies that the agreement to pay, if any, then became effective." (P. 510.)

With respect to the use of plaintiffs' property, defendant argues that the several auditions of the pilot films to the agencies in question were the equivalent of the "tests" occurring in the cited case. According to plaintiffs, however, some 15 months elapsed from the creation of the two films to

their first eventual broadcast to the television public; under such circumstances, they continue, the entire statutory period could have elapsed before they were made aware of defendant's use of their property. ■ The point is not well taken since a cause of action for breach of contract ordinarily accrues at the time of breach even though the injured party is unaware of his right to sue (Witkin, Cal. Procedure (1954) p. 624). ■ In our view, nevertheless, there is merit to plaintiffs' further argument that the use contemplated by the second *Thompson* case is not the private or quasi-private use found in the within action. While not precisely so saying, defendant would equate the private auditioning of a film to national advertising agencies with the "sneak preview" of years gone by. It bears emphasis that the cited case turned on the exhibition of the idea to "a substantial segment of the public in two metropolitan centers in this state," which exhibition "would certainly destroy any further marketability of the idea." (P. 510, *supra*.) Implicit in the above observations is the idea's *public* marketability and not, as defendant urges, its asserted diminuation in value after rejection by so-called advertising experts after a private showing. Certainly it may not be said as a matter of law and under the conceded facts that the foregoing circumstances should be considered a use of plaintiffs' property for the purposes of the running of the statute.

■ Next defendant contends that there is no substantial evidence that plaintiffs' property had any market value, and even if it did have some value, the sum awarded ($200,000) was grossly excessive and resulted from the erroneous admission of evidence. Plaintiff Ross, a co-owner of the property, testified on direct examination that the value of the property at the time of its first syndication in January of 1958 was "In excess· of a million dollars." His opinion was uncontradicted, defendant electing not to call any experts concerning value. ■ California courts have consistently held that an owner of literary property may properly testify as to its value even if he is not an expert in such matters. (*Golding* v. *R.K.O. Pictures, Inc.*, 35 Cal.2d 690, 700-701 [221 P.2d 95], and cases cited therein.)² ■ Here, however, coupled with ownership was Ross' considerable experience in the field of television production. Ross had spent some 39 weeks assisting in the production of a television series called "Sally," and was also engaged as a consultant on a series entitled "My Favorite Husband." Defendant advances several reasons for rejecting his valuation as lacking in "ponderable legal significance" which is not "deemed synonymous with 'any' evidence." (*Estate of Teed*, 112 Cal.App. 2d 638, 644 [247 P.2d 54].) Isolated excerpts from Ross' testimony,

---

²Defendant criticizes the "terse" treatment given this rule by Wigmore, which is as follows: "The *owner of an article*, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury; and Courts have usually made no objections to this policy." (3 Wigmore, Evidence, 3d ed., § 716.)

detracting from its weight, are cited; it is also argued that the witness (Ross) gave no credible reasons for the valuation fixed.

Defendant does not challenge the qualifications of the witness—nor could he properly do so in view of the rule above mentioned; in addition to his owner's status, there also would appear to be no contention that Ross was not without experience in appraising the worth of properties in the television field since stories were submitted to him by various agents for approval or rejection over a period of years (1949 to 1955). It was his experience in such field that presumably formed the basis or reason for the valuation he gave, partisan though it might have been.[3] Pertinent here are certain statements in *Sheldon* v. *Metro-Goldwyn Pictures Corp.,* 309 U.S. 390 [84 L.Ed. 825, 60 S.Ct. 681], regarding opinion testimony: "By virtue of an extensive experience, they had an intimate knowledge of all pertinent facts relating to the production and exhibition of motion pictures. Nor can we say that the testimony afforded no basis for a finding. What we said in the Dowagiac Mfg. Co. case is equally true here,—that what is required is not mathematical exactness but only a reasonable approximation. That, after all, is a matter of judgment; and the testimony of those who are informed by observation and experience may be not only helpful, but as we have said, may be indispensable. . . ." (309 U.S. at p. 408 [84 L.Ed. at p. 835].) Parenthetically, it appears that defendant is not so much complaining that the valuation was only an approximation as challenging the amount of such estimate or approximation. Furthermore, the above estimate was not a "guess" as was the testimony of the owner in *Newhart* v. *Pierce,* 254 Cal.App.2d 783 [62 Cal.Rptr. 553], relied on by defendant (the owner testified that his ranch was worth " '$150,000 probably; I am just guessing.' " [P. 789]).

■ Again in the light of Ross' competency to testify as to value, the present point is governed by the following legal principle: " 'If the witness disclosed an ample knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than to its admissibility.' [Citations.]" (*Pfingsten* v. *Westenhaver,* 39 Cal.2d 12, 20 [244 P.2d 395].) ■ Indeed, defendant upon the trial apparently recognized the applicability of the foregoing by submitting an instruction (defendant's No. 50) on the effect of an owner's opinion testimony from which the following excerpt was read to the jury: "You are not bound, however, by such opinion. Give it the

---

[3] "A witness testifying in the form of an opinion may state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training and education) upon which it is based. . . ." (Evid. Code, § 802.)

weight to which you deem it entitled, whether that be great or slight, and you may reject it if in your judgment the reasons given for it are unsound."

With respect to the present point, it is further contended that the trial court erroneously permitted plaintiff Ross to testify to the property's value in January of 1958 when the Sea Hunt series was syndicated; instead, defendant argues, the valuation should have been confined to the dates when the first and second pilots were auditioned to national advertising agencies. This contention is disposed of by our prior determination with relation to the running of the statute of limitations. However, we add the following observations. In order to be compensable, the "use" must be an unauthorized one. The contemplated use upon which the contract was based was the showing of the property to the public on television; it is this kind of uncompensated use which would diminish or destroy the value of the property. Plaintiffs have never objected to the auditioning of the two pilots; as a matter of fact they concede that defendant had a perfect right to do so in order to determine if the property was saleable to a sponsor. The contention is also made that the trial court, upon hearing of defendant's motion for a new trial, indulged in speculation when it justified the judgment in light of some 100,000 telecasts, allowing $2 for each such exhibition. In doing so, the court had in mind the testimony of Herbert Gordon, defendant's vice-president, who gave the only testimony regarding methods of compensation employed by his company at the time in question. One such method was a "royalty" deal consisting of a certain fee per episode; another was "a percentage of profits" deal ranging from 2½ percent to 10 percent of the profits. Consideration of the above testimony compels the conclusion that the trial judge did not err, particularly when compared with other approved ways of resolving the problem. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . .' The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights. [Cases cited.]" (*Bigelow* v. *RKO Radio Pictures,* 327 U.S. 251, 265-266 [90 L.Ed. 652, 660-661, 66 S.Ct. 574].)

There is still another criticism of the trial court's refusal to disturb the amount of the award. Defendant argues that the court employed a theory concerning which no evidence was produced, the court stating that the sum awarded (100,000 telecasts at $2 each) represented "the value of the use to the defendant." The instant case, says defendant, "was not tried on any theory of value of use but on the market value of the property." Quoted is an excerpt from plaintiffs' pretrial statement in which one

contention is declared to be "the reasonable marketable value and worth of plaintiffs' property when appropriated. . . ."[4] Reliance is also placed on *Joint Highway Dist. No. 9* v. *Ocean Shore R.R. Co.,* 128 Cal.App. 743, 753-755 [18 P.2d 413], to the asserted effect that value of the use is not the same as market value. We do not believe that the cited case stands for the all-encompassing proposition attributed to it. In *People* v. *La Macchia,* 41 Cal.2d 738, 754 [264 P.2d 15], the court declared that "market value" is to be determined with due consideration of all its available uses. ▪▪ More pertinent here, and deemed controlling, is the following from *Universal Pictures Co.* v. *Harold Lloyd Corp.* (9th Cir. 1947) 162 F.2d 354, 369, quoting a decision of the United States Supreme Court: " 'Value for exchange is not the only value known to the law of damages. There are times when heed must be given to value for use, if reparation is to be adequate. . . . The market test failing, there must be reference to the values inherent in the thing itself, whether for use or for exchange.' "

▪▪ The third assignment of error asserts, despite the jury's implied finding to the contrary, that the Sea Hunt series was created by Tors on his own initiative and with the help of other of defendant's employees wholly independent of plaintiffs' material. The same claim was unavailingly made upon the first appeal, the judgment as to Tors being affirmed solely for the reason that neither before, nor at the time of the property's submission to his employer, did he as an individual expressly or impliedly promise to pay the reasonable value of its use. However, as to his employer (defendant here), the judgment notwithstanding the verdict was reversed, the court holding that defendant's evidence that it did not use plaintiffs' idea was not of the character found in *Teich* v. *General Mills, Inc.,* 170 Cal.App.2d 791 [339 P.2d 627] (relied on by defendant), i.e., so "clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved." (*Donahue* v. *Ziv Television Programs, Inc., supra,* 245 Cal.App.2d 593, 599.) To the contrary, the prior appeal held that as to the defendant employer "the judgment cannot be affirmed on the basis that independent conception was conclusively proven." (P. 599.)

In *Stanley* v. *Columbia Broadcasting System, Inc.,* 35 Cal.2d 653, 655 [221 P.2d 73, 23 A.L.R.2d 216], the rule is reiterated that the question of originality and novelty is one of fact for the jury. In remanding the within claims for retrial, the prior opinion expressed the belief that the defense of independent creation by Tors was vulnerable (245 Cal.App.2d 593, 599): "To a very large extent Tors' recital of his interest in underwater backgrounds was uncorroborated. Some of the written material he pro-

---

[4]The pretrial statement in question pertained to the first trial, bearing a 1961 date, and is hardly a basis for the claim asserted.

duced to prove his interest could have been gathered after the event. His testimony differed sharply on certain points with that of plaintiffs' witnesses, whom the jury evidently believed. There is no need to further detail the vulnerability of the defense." Taking the above cue defendant, on the second trial, understandably produced corroboration of certain events to which Tors testified. Including such corroboration the testimony on both sides is not substantially different from that adduced at the first trial. Nonetheless defendant claims that the showing on retrial is "much stronger than on the first appeal." ▇▇▇ As to the quantum of evidence, that may be true but the number of witnesses is not necessarily determinative of where the truth lies, nor does it follow that more weight should be accorded claims where there is more evidence supportive thereof. ▇▇▇ We do not intimate, as urged by plaintiffs, that as to this phase of the litigation the prior opinion is the law of the case; however, we do say that substantial evidence exists when substantially the same evidence is presented upon retrial which a prior opinion held was sufficient to go to a jury.

Among other determinations made on the prior appeal were the following: "The success of 'Sea Hunt' tends to prove that somebody, whether it be plaintiffs or Tors, submitted a valuable idea to Ziv. Whether Ziv used plaintiffs' format or Tors' is another question, but certain evidence of similarities between some 'Sea Hunt' episodes and parts of the 12 outlines and the screenplay submitted by plaintiffs may have suggested to the jury that 'Sea Hunt' was based on plaintiffs' format.

"Only length, but little else, would be added to this opinion were we to set down in detail what these similarities are. Those concerned know what we refer to. [Fn. omitted.]

"We do not imply that the outlines were protectible literary property or that there was any copying as to form or manner of expression. *It is just that there are enough similarities in basic plot ideas, themes, sequences and dramatic 'gimmicks' that a jury might well have thought that plaintiffs' format and outlines had been submitted to Ziv as asserted by them and that it was their format which was the inspiration for 'Sea Hunt,' rather than Tors' alleged original idea."* (Italics added; *supra*, 245 Cal.App.2d 593, 600-601.) As it was entitled to do, the jury on retrial so found.

Several pages of defendant's briefs are devoted to the worth of Tors' corroboration, documentary and otherwise; in almost an equal number of pages plaintiffs challenge the credibility or weight of such testimony. Defendant contends that it was "plaintiffs' burden to prove by substantial evidence (not by a scintilla of evidence) that Tors had knowledge of and used their material," citing *Estate of Teed, supra,* 112 Cal.App.2d 638,

644. We do not view the evidence produced by plaintiffs as lacking in "ponderable legal significance," and it was for the trial court to determine which side met the proper burden of proof. (*Simmons* v. *Patrick,* 211 Cal.App.2d 383, 389 [27 Cal.Rptr. 347].) With respect to defense testimony generally, and Tors' corroboration specifically, the following is apropos: "It is contended on behalf of appellants that the implied finding of the jury that appellants made use of their composition is not supported by the evidence. Their argument is based largely upon the testimony of writers in the employ of appellants who testified that they did not use plaintiffs' manuscript. It is within the province of the jury to draw reasonable inferences from the facts shown in evidence and the effect of inferences reasonably drawn is not destroyed as a matter of law by the testimony of witnesses which may be considered as contradictory thereto. . . . Notwithstanding the testimony of the writers the issue of fact remained for the determination of the jury who were the sole judges of the weight of the testimony and who were not bound to accept testimony as true if they were not convinced of its truth. [Citation.] Uncontradicted denials on the part of employees of appellants did not compel the conclusion on the part of the jury that there had been no copying of plaintiffs' manuscript." (*Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal.App.2d 556, 560-561 [90 P.2d 371].)

For the foregoing reasons we hold that substantial evidence exists for the implied finding that plaintiffs' format, not the idea assertedly conceived by Tors, was used.

 As its next point defendant contends that it did not use any substantial portion of plaintiffs' "literary property" as the idea consistently was alleged to be in plaintiffs' pleadings and in certain instructions submitted by them. Cited is *Ware* v. *Columbia Broadcasting System, Inc.,* 253 Cal.App.2d 489 [61 Cal.Rptr. 590], where the material was similarly referred to by plaintiff Ware, consisting of a complete dramatic work attached to the complaint. The difference between *Ware* and our case lies in the fact that in the former the appellate court determined as a matter of law that defendant did not use plaintiff's property: "The mood of defendants' play, and its dramatic development, are entirely different from plaintiff's." (P. 492.) In response to language found in defendant's requested instruction No. 42,[5] citing the *Ware* case, the jury impliedly found that a substantial use was made of the idea or "literary property." Such finding was presumably based on several similarities between "Underwater Legion" and "Sea Hunt" set forth at convincing length in plaintiffs'

---

[5] "Unless you find that defendant used a substantial portion of plaintiffs' material, there is no use recognized by law for which defendant would be obliged to make payment to plaintiffs. A mere trivial or minor use of plaintiffs' material if you find it was used, would not justify your finding such use as the law recognizes.

"By substantial use, I mean a use in an real, true, important and material respect."

brief and also noted in lesser length in the prior opinion (245 Cal.App.2d 593, 599-600); too, it becomes binding on appeal supported (as it was) by substantial evidence. (*Golding* v. *R.K.O. Pictures, Inc.,* 35 Cal.2d 690, 699 [221 P.2d 95].)

■ There is no merit to defendant's additional point that an affirmance of the challenged judgment would conflict with established federal law. Specifically, it is argued that to sustain the award upon an implied (as distinguished from an express) contract to pay for an idea would be an attempt to create a private right in public domain material and thus conflict with paramount (and governing) federal law. Such argument is grounded upon a false premise. Defendant asserts that to be sustainable "The judgment must rest on an implied contract" which, on the record here, is said to be "coercive and not voluntary" and hence not properly inferable from the use of plaintiffs' idea. The prior opinion noted, with regard to the basis of recovery on the first trial, that "there seems to be . . . much confusion between 'implied in fact' contracts and those 'implied in law' and further confusion between 'express promises' . . . ." (*Supra,* 245 Cal.App.2d 593, 602.) Reference is later made to *Desny* v. *Wilder,* 46 Cal.2d 715 [299 P.2d 257], and the rules therein laid down. ■ "1. Recovery for the use of an idea must be based on a true contract which the court, were it not for precedent (*ibid.* p. 735), would prefer to call an express contract, which may be proved by either express promises or by 'circumstantial evidence.' [Footnote omitted.] (*Ibid.* p. 738, fn. 9.) The court recognizes, however, that usage and the Civil Code (§ 1621) have established the term 'implied-in-fact' for express contracts proved by circumstantial evidence." (*Supra,* pp. 604-605.) ■ As noted in *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778, 794 [256 P.2d 947], "The only distinction between an implied-in-fact contract and an express contract is that, in the former, the promise is not expressed in words but is implied from the promisor's conduct."
■ Viewed in light of the foregoing, it is not strictly correct for defendant to urge that the record does not support a finding of an express contract unless no attention is given to the considerable circumstantial evidence disclosed by the record; and certainly it validly may not be claimed that no contract, implied-in-fact, arose between the parties to this litigation.

For this reason alone, the several federal cases cited by defendant are not in point. Too, they adhere to the view that once something is made public the only protection is by invoking certain federal statutes which implement the policy found in article I, section 8 of the Constitution and allow free access to copy whatever such laws leave in the public domain. That is not the situation here where there had never been disclosure or publishing (which would make the property public) prior to the negotiations in question.

Cited at oral argument are some four cases which do not serve to change

our views either with respect to the present point or other contentions on behalf of which such decisions are urged, i.e., an affirmance here would add to the "chaos" presently prevailing in California as to what should be paid for an idea under a so-called implied contract since *Minniear* v. *Tors,* 266 Cal.App.2d 495 [72 Cal.Rptr. 287], holds that there was sufficient evidence for a jury to find that Ziv had contracted with the plaintiff there for the same idea here sued on. Defendant does not go so far as to say that *Minniear* has become the law of the case, thus disposing of plaintiffs' present claims for satisfaction on such basis. ▮▮▮ Too, as observed on the prior appeal, "An idea which can be the subject matter of a contract need not be novel or concrete. [Citation.] It may be valuable to the person to whom it is disclosed simply because the disclosure takes place at the right time." (*Supra,* 245 Cal.App.2d 593, 600.) Additionally, by its references to *Desny* v. *Wilder, supra,* 46 Cal.2d 715, the *Minniear* case also answers, adversely to defendant's claims, the various propositions for which the three other cases are said to stand.

▮▮▮ Defendant also complains that prejudicial error was committed by the court's refusal to give certain of its proposed instructions, seven in number; no criticism is made, however, of any of the instructions actually given. We have examined each and all of the criticisms urged by defendant and find that the instructions, as proposed, were properly refused for the reasons thereinafter given: Instruction No. 5-A (argumentative and covered by other instructions); Nos. 12 and 13 (either covered by other instructions or ambiguous by reason of its omission to include certain essential facts); No. 20 (covered by other instructions and also objectionable on the ground of ambiguity); No. 24 (an incorrect statement of the law since not in harmony with the test laid down in *Stanley* v. *Columbia Broadcasting System, Inc., supra,* 35 Cal.2d 653, 661-662); No. 29 (covered by other instructions). ▮▮▮ The law is settled that "if all instructions, taken together, give to the jury a fair and just understanding of the law upon the point to which they are addressed, such is sufficient. [Citation.]" (*Philbrick* v. *Weinberger,* 228 Cal.App.2d 681, 686-687 [39 Cal.Rptr. 617].) ▮▮▮ Examining the entire charge, we conclude that the above principle was complied with.

▮▮▮ Defendant's final point relates to the admission and exclusion of certain evidence as to the value of the property's use. It is contended that Ross should not have been allowed to testify to value as of January 1958, while defendant's vice-president, over objection, was permitted to give the number of telecasts after it was put in public syndication. The above claims have already been adversely determined under our discussion of a previous point which was concerned with market value and the admissibility of

plaintiff Ross' testimony as a co-owner of the property. We need not, therefore, elaborate further.

The judgment is affirmed; the order denying the motion for judgment notwithstanding the verdict is also affirmed; the appeal from the order denying the motion to tax costs is dismissed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 6, 1970, and appellant's petition for a hearing by the Supreme Court was denied February 13, 1970.