Filed 4/3/24  Maxi-Med Supply v. Health Net CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MAXI-MED SUPPLY, INC., | B324366 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV30021) |
| v. | |
| HEALTH NET, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara M. Scheper, Judge.  Affirmed.

Jeffrey D. Nadel for Plaintiff and Appellant.

Prospera Law, Brandon R. Mead, Richard J. Decker, and David E. Mead for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff and Appellant Maxi-Med Supply, Inc. (Maxi-Med) appeals from a judgment after the trial court sustained Defendant and Respondent Health Net, LLC's (Health Net) demurrer to Maxi-Med's second amended complaint without leave to amend. Maxi-Med alleged causes of action for breach of implied-in-fact contract, fraud, and unfair business practices in violation of Business and Professions Code section 17200. Each of Maxi-Med's causes of action are based on Health Net's failure to reimburse Maxi-Med for medical supplies provided by Maxi-Med to Health Net's insureds.

We conclude the trial court properly sustained Health Net's demurrer. Further, because Maxi-Med has not met its burden to show how it can amend its pleading to state a cause of action under any legal theory, we conclude the trial court did not abuse its discretion in denying leave to amend. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual allegations

Maxi-Med's second amended complaint alleged the following.

Maxi-Med is a credentialed provider of medical devices and is enrolled as a Medi-Cal provider with the Department of Health Care Services (DHCS). Health Net is a medical insurance company that services the needs of its insureds, and is one of four primary providers of Medi-Cal services. Maxi-Med is one of thousands of servicers, who provide medical supplies to Health Net's insureds.

Maxi-Med alleged it had the following arrangement with Health Net. Maxi-Med would provide Health Net's insureds, who were also Medi-Cal beneficiaries, with medical supplies. Maxi-

2

Med would then bill Health Net for those supplies, and Health Net would reimburse Maxi-Med. By January 2021, Maxi-Med estimates that over $160,000 of accounts receivable were due and owing from Health Net. This amount included orders for supplies that were authorized by Health Net. Maxi-Med performed all its obligations as a provider of medical products and services, and suffered damages as a result of Health Net's conduct.

Maxi-Med further alleged Health Net engaged in fraud when it knowingly misrepresented it would pay Maxi-Med for supplies it authorized. Health Net intended for Maxi-Med to rely on the representation of payment to complete the delivery of medical supplies and to deprive Maxi-Med of compensation. Maxi-Med also alleged Health Net fraudulently delayed and rejected the processing of Maxi-Med's claims for reimbursement by sending "unusual 'error codes' " to Maxi-Med, for example, indicating Health Net was denying payment based on Maxi-Med's untimely reimbursement requests.

Further, Maxi-Med alleged Health Net contracted with an out-of-state medical provider, who was not licensed or credentialed in California. Then, in an attempt to steal Maxi-Med's business, Health Net directed its insureds to get their medical supplies from the out-of-state medical provider. The out-of-state medical provider charged less than Maxi-Med for the same services. This was in violation of 42 Code of Federal Regulations part 431.51, which affords certain Medicaid beneficiaries the "freedom of choice of providers of family planning services." (42 C.F.R. § 431.51(b)(2) (2007).)

Maxi-Med also alleged Health Net engaged in unlawful business practices by misappropriating insurance premiums and revenues without regard for the lawful duties of an insurer to pay

3

for the medical needs of its insureds. In further support of its cause for unfair business practices, Maxi-Med realleged Health Net's conduct violated 42 Code of Federal Regulations part 431.51(b) (2007).

## II.    Procedural history

Maxi-Med filed its initial complaint in August 2021. Health Net demurred, arguing Maxi-Med failed to plead mutual assent sufficient to demonstrate the existence of an implied contract; there was no agreement to pay for a specific service at a specific price; and there was no request or acceptance by the parties to perform services. Maxi-Med opposed the demurrer and requested leave to amend. The trial court sustained the demurrer and granted leave to amend.

Maxi-Med filed a first amended complaint in January 2022. Maxi-Med attached a redacted exemplar of an authorization disposition form, showing Health Net approved certain services provided by Maxi-Med. The form states: "An authorization is not a guarantee of payment. Member must be eligible at the time services are rendered. Services must be a covered Health Plan Benefit and Medically Necessary." Maxi-Med also attached a redacted refund request from Health Net to Maxi-Med for $163.20, indicating that previous refund request erroneously omitted a notice of Maxi-Med's appeal rights and refund address. Health Net demurred again, and Maxi-Med opposed. The trial court sustained the demurrer and granted leave to amend.

Maxi-Med filed its second amended complaint in May 2022. Maxi-Med attached another exemplar of an authorization disposition form, as well as other exhibits, including Maxi-Med's license to operate a home medical device retail facility with the Department of Public Health; Maxi-Med's accreditation with the

4

Board of Certification/Accreditation; a December 2012 letter from DHCS welcoming Maxi-Med to the Medi-Cal program; a list of frequently asked questions from DHCS for Medi-Cal providers; statements of outstanding refunds from Health Net to Maxi-Med, a redacted spreadsheet showing unpaid amounts for unknown services provided by Maxi-Med; the second page of a letter, advising Maxi-Med about late claim billing limit exceptions and encouraging Maxi-Med staff to attend statewide training seminars for billing; a September 2018 letter from Health Net to one of its insureds advising him or her that he or she is currently receiving medical supplies from an out-of-network provider, which are not a covered benefit, and to obtain medical supplies from "J & B Medical Supply Co. Inc.," a provider in Health Net's provider network; and a printout from a Health Net's website with instructions for medical providers to participate in Health Net's provider network. The second amended complaint also included additional allegations regarding specific employees of Health Net who were involved in denying Maxi-Med's requests for reimbursement.

Health Net demurred again, and Maxi-Med opposed. The record does not show Maxi-Med requested leave to amend. The trial court sustained the demurrer without leave to amend.

Maxi-Med appealed.

## DISCUSSION

On appeal, Maxi-Med argues it sufficiently alleged causes of action for breach of implied contract, fraud, and unfair business practices. It further argues the trial court abused its discretion by denying leave to amend because Maxi-Med can amend its complaint to cure each alleged cause of action and can state an additional cause of action for equitable subrogation.

5

We find Maxi-Med has not sufficiently pleaded any of its alleged causes of action and has not met its burden to show how it can amend its pleading to state a cause of action under any possible theory.

## I.     Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.  [Citations.]'  [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory."  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)  " 'Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer.' "  (*County of San Bernardino v. Superior Court* (2022) 77 Cal.App.5th 1100, 1107.)

" 'If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend.  If we determine otherwise, then we conclude it did not.'  [Citation.] ' "The burden of proving such reasonable possibility is squarely on the plaintiff." '  [Citation.]  To satisfy this burden, ' "a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading' " ' by clearly stating not only the legal basis for the amendment, but

6

also the factual allegations to sufficiently state a cause of action." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 618.)

## II. The trial court properly sustained Health Net's demurrer and did not abuse its discretion by denying leave to amend

### A. Breach of implied contract

" 'A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct.' [Citations.] ' "[B]oth types of contract are identical in that they require a meeting of minds or an agreement [citation]. Thus, it is evident that both the express contract and contract implied in fact are founded upon an ascertained agreement or, in other words, are consensual in nature, the substantial difference being in the mode of proof by which they are established." ' " (*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1230.)

Maxi-Med argues it has sufficiently pleaded a cause of action for breach of an implied-in-fact contract because its complaint alleged: (1) an agreement that Maxi-Med would provide supplies and Health Net would reimburse for those supplies; (2) Maxi-Med's performance; (3) Health Net's breach, i.e., nonpayment; and (4) resulting harm.

Maxi-Med's theory of an implied agreement between itself and Health Net is as follows. Because Maxi-Med is registered in California as a credentialed provider of medical devices and is enrolled as a Medi-Cal provider with DHCS, and Health Net is one of only four medical insurance companies in California that provides administration of Medi-Cal services, Maxi-Med could

7

reasonably expect to provide supplies to Health Net's insureds and receive reimbursement for those supplies. Additionally, because Health Net entered into a contract with DHCS to provide covered services to eligible Medi-Cal beneficiaries, and Maxi-Med is a Medi-Cal provider, "a reasonable person would conclude that a mutual agreement exists between Maxi-Med and Health Net that Health Net would reimburse Maxi-Med for [s]upplies provided to Health Net insureds where the [s]upplies or servicers were medically necessary."[1]

Maxi-Med has not sufficiently alleged an implied agreement with Health Net to pay for supplies. To allege an implied-in-fact contract, Maxi-Med must allege a "meeting of the minds" between itself and Health Net (*Silva v. Providence Hospital of Oakland* (1939), 14 Cal.2d 762, 773) and a promise that can be implied from Health Net's conduct (*Donahue v. United Artists Corp.* (1969) 2 Cal.App.3d 794, 808). Maxi-Med's bare allegation that Health Net is a Medi-Cal administrator and Maxi-Med is a Medi-Cal provider does not allege a meeting of the minds or an implied promise based on Health Net's conduct. According to Maxi-Med, so long as a supplier is enrolled with Medi-Cal, any supplies provided to a Medi-Cal beneficiary are presumptively subject to reimbursement. However, Maxi-Med

_____

[1]   In its opening brief, Maxi-Med requested we take judicial notice of an amended contract between DHCS and Health Net with respect to Los Angeles County in which Health Net agreed to provide covered services to eligible Medi-Cal beneficiaries. Maxi-Med has not provided us with a copy of the agreement nor was it presented to the trial court. Therefore, we deny Maxi-Med's request. (See *Coy v. County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1083, fn. 3.)

has cited no authority for such a sweeping proposition, and we are aware of none.  Therefore, Maxi-Med has failed to state a cause of action for breach of implied-in-fact contract based on this theory.

Nor has Maxi-Med shown that it can amend its pleading to state a cause of action for breach of implied-in-fact contract, for example, by alleging an agreement to pay for a specific supply at a specific price, or that it can allege it was entitled to reimbursement because it met the additional conditions described in the authorization disposition form.  Because Maxi-Med has failed to meet its burden to show how it can amend its pleading to state a cause of action for breach of implied-in-fact contract, or indeed, under any legal theory for which it would be entitled to relief, we find the trial court did not abuse its discretion in denying leave to amend this cause of action.

## B.    Fraud

"The elements which must be pleaded to plead a fraud claim are '(a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Agricultural Ins. Co. v. Superior Court* (1999) 70 Cal.App.4th 385, 402.) "The misrepresentation element must normally be satisfied by an affirmation of fact." (*Ibid.*)

"Each element in a cause of action for fraud or negligent misrepresentation must be factually and specifically alleged. [Citation.]  The policy of liberal construction of pleadings is not generally invoked to sustain a misrepresentation pleading defective in any material respect." (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.)

9

Maxi-Med's theory of fraud is Health Net misrepresented to Maxi-Med that Health Net would pay for authorized medical supplies. However, Maxi-Med's fraud theory is belied by the exhibits attached to its complaint. The authorization disposition form states authorization is not a guarantee of payment, and that any reimbursement was contingent on the supplies being medically necessary and a covered health benefit. We fail to see how Health Net knew these authorizations were false or intended to defraud Maxi-Med when the authorization form expressly states payment is conditioned on the supplies being a covered benefit and medically necessary.

Maxi-Med's other theories do not support a cause of action for fraud. For example, Maxi-Med alleges it received "error codes" from Health Net and that some claims were denied because they were untimely but does not explain how those denials or error codes constituted a misrepresentation. Maxi-Med also alleges Health Net engaged in fraud by directing its members to an out-of-state provider, but again does not connect this allegation to a misrepresentation.

Thus, we conclude the trial court properly sustained Health Net's demurrer with respect to this cause of action. Further, we conclude the trial court did not abuse its discretion in denying leave to amend as Maxi-Med has not shown how it can cure its defective pleading through amendment.

C.    **Unfair business practices**

Business and Professions Code section 17200 provides: "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." The law's coverage is " 'sweeping, embracing " 'anything that can properly be called a

10

business practice and that at the same time is forbidden by law.' " ' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."  (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, at p. 180.)

"However, the law does more than just borrow.  The statutory language referring to 'any unlawful, unfair or fraudulent' practice . . . makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law.  'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.  "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' "  (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th at p. 180, italics omitted.)

Maxi-Med alleges that Health Net engaged in unfair business practices by misappropriating insurance premiums and revenues without regard for the lawful duties of an insurer to its insureds to pay for their medical needs.  In its appellate briefing, Maxi-Med adds that Health Net denied claims submitted by Maxi-Med and intentionally steered Medi-Cal insureds to an out-of-network supplier.  Maxi-Med also alleges that Health Net intended to violate 42 Code of Federal Regulation part 431.51(b)(2) (2007), which provides certain Medicaid beneficiaries "may not be denied freedom of choice of qualified providers of family planning services."

11

We fail to see how these allegations are sufficient to state a cause of action for unfair business practices. First, as pled, Maxi-Med appears to allege Health Net breached its duty as an insurer to its insureds to pay for medically necessary services. However, Health Net's duty to pay for medically necessary services is owed to its insureds, not Maxi-Med. Second, Maxi-Med has not explained how Health Net's conduct in directing its insureds to one of Health Net's in-network providers to avoid noncovered claims is an unfair business practice. Third, Maxi-Med has not explained how Health Net violated its insureds' right to the "freedom of choice of providers of family planning services" described in 42 Code of Federal Regulations part 431.51(b) (2007). "Family planning services include a broad range of medically approved services, which includes Food and Drug Administration (FDA)-approved contraceptive products and natural family planning methods, for clients who want to prevent pregnancy and space births, pregnancy testing and counseling, assistance to achieve pregnancy, basic infertility services, sexually transmitted infection (STI) services, and other preconception health services." (42 C.F.R. § 59.2 (2021).) Maxi-Med has not alleged that any of its claims were related to family planning services.

Accordingly, we find the trial court properly sustained Health Net's demurrer with respect to this cause of action and did not abuse its discretion in denying Maxi-Med leave to amend as Maxi-Med has not shown how it can cure its defective pleading through amendment.

**D. Subrogation**

Lastly, Maxi-Med argues it should be granted leave to amend its pleading to state a cause of action for equitable

12

subrogation.  However, as a medical supplier relying on case law explaining equitable subrogation in the insurance context, Maxi-Med has not explained how the doctrine of equitable subrogation would apply here.  In the insurance context, equitable subrogation is generally found to have six elements:  "(1) [t]he insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends; (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged . . .; and (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable."  (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1596.)

To state the obvious, Maxi-Med is not an insurer, and it has not explained how it can plead any of the necessary elements of a cause of action for equitable subrogation.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


GRIMES, J.